DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Huron County Court of Common Pleas which, following a trial to the bench, awarded appellee, Michael A. Rang, judgment against appellant, Carter Lumber Development Company ("Carter Lumber"), in total amount of $10,415.66. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On appeal, Carter Lumber raises the following assignments of error: *Page 2 
 {¶ 3} "Assignment of Error I :
 {¶ 4} "The trial court erred, to the prejudice of Carter Lumber, by ruling that Mr. Rang's action was not barred by the applicable statute of limitations."
 {¶ 5} "Assignment of Error II:
 {¶ 6} "The trial court committed error, to the prejudice of Carter Lumber, by that [sic] including both the cost of the I-beam and the consequential damages in its judgment."
 {¶ 7} On August 31, 2000, appellee purchased $6,185.97 worth of building materials from Carter Lumber in Norwalk, Ohio. As was customary between the parties, the materials were to remain in Carter Lumber's possession until demanded by appellee. Appellee demanded a portion of his purchase in October 2003, but was informed that Carter Lumber would not deliver the materials, or otherwise allow appellee to take possession of them, without further investigation. Because Carter Lumber would not deliver his materials at that time, appellee purchased replaced materials for the portion of material that he had demanded, which, due to an increase in material price, cost appellee $998.27 more than it had in 2000. Eventually, in October 2005, appellee repurchased the balance of materials not delivered by Carter Lumber. Again, due to an increase in material costs, appellee expended an additional $3231.42 to replace the material originally purchased from Carter Lumber in 2000. Appellee sued Carter Lumber on August 26, 2005, to recover his losses due to Carter Lumber's breach of contract and conversion of appellee's building materials. Cross motions for summary judgment, *Page 3 
including Carter Lumber's statute of limitations claim, were all denied by the court. On June 2, 2006, the matter came before the court for a trial to the bench. The following relevant evidence was adduced.
 {¶ 8} At trial, appellee testified that, on May 2, 1999, he bought $2,122.92 of building materials, including oriented strand board ("OSB"), from the Carter Lumber Store in Norwalk, Ohio. These materials were to be used in the construction of appellee's private residence. According to appellee, Carter Lumber never delivered the materials and never demanded appellee take possession of them. Appellee further testified that Carter Lumber was aware that these materials were not going to be needed for at least a year and a half, and that there was an understanding that Carter Lumber would maintain possession of the materials until they were needed.
 {¶ 9} In August 2000, the cost of materials had dropped since appellee's May 1999 purchase. Because appellee had not yet taken possession of his building materials, Jeff Cheney, an outside salesman for Carter Lumber at that time, suggested that appellee return the items purchased in May 1999 and repurchase them along with additional materials. Appellee testified that, on August 31, 2000, he purchased $6,185.97 of materials from Carter Lumber and, on September 8, 2000, was refunded the $2,122.92 he spent in 1999. The materials purchased on August 31, 2000 included 3 different sizes of OSB, as well as 2,300 lineal feet of "I-joist." Appellee testified that it was understood by appellee and the manager of Carter Lumber at that time, Ken Hardin, that Carter Lumber was to maintain possession of the OSB until such time as appellee needed it. *Page 4 
 {¶ 10} Appellee testified that he ran into problems in the construction of his home and Carter Lumber maintained possession of the OSB. Appellee also testified that upon notice of a change in management at Carter Lumber, appellee would inform the new manager of the situation. At trial, appellee presented the original customer copy of his August 31, 2000 receipt with a notation that states: "Mat. Pd. For in 2000. Still owed Material. JSII." According to appellee, on February 4, 2003, the person who represented himself to be the manager at that time, John Swain II, made the notation on the original customer copy. Appellee's witness, Mark White, a former Carter Lumber employee, testified that he recognized "JSII" as the initials of John Swain II.
 {¶ 11} In October 2003, appellee demanded delivery of a portion of the items paid for on August 31, 2000. Appellee testified that Carter Lumber's manager at that time, Gino Meehan, stated that he was not aware of the situation and would not honor appellee's demands without some investigation. Needing a portion of the material, appellee purchased 90 sheets of 7/16 inch OSB from Carter Lumber on October 7, 2003, to replace a portion of the materials that had been paid for on August 31, 2000, but never delivered. In so doing, appellee incurred an additional cost of $998.27 due to an increase in material price. Appellee testified that a notation was made on the October 7, 2003 receipt which stated: "credit if verification of invoice dated 2000."
 {¶ 12} Appellee testified that on October 28, 2005, he purchased from another retail store the balance of the materials that he had purchased at Carter Lumber on August *Page 5 
31, 2000. Appellee incurred an additional cost for materials of $3,034.20 due to an increase in material price and $197.22 in sales tax.
 {¶ 13} Appellee further testified on cross-examination that it was not until 2003 that he sent a letter of any kind informing Carter Lumber of an agreement for Carter Lumber to maintain possession of the materials until needed. Appellee also stated that, even though he received regular credit card statements from Carter Lumber, which made no reference to the non-delivered goods and did not credit him for the materials that had been purchased but not yet received, he never contested them.
 {¶ 14} Appellee also testified that, sometime in 2003, he knew "Carter Lumber was not going to acquiesce to the demands," but made no attempt to purchase the remainder of the materials, nor collect estimates, at that time. Upon questioning from the court, appellee testified that he did not gather prices closer to October 7, 2003 because he was unaware, at that time, that he was not going to get the materials he purchased from Carter Lumber.
 {¶ 15} Also, during cross-examination of appellee, he testified that he had no written documentation of the price that he paid for the materials purchased on October 28, 2005. The only documentation that he produced was a hand-written note of a telephone conversation between appellee and the Oberlin Carter Lumber store regarding Carter Lumber's prices on that day. This hand-written note was not admitted into evidence, but appellee was permitted to testify from it. Appellee testified that the reason *Page 6 
he did not have documentation from October 28, 2005 was because he purchased different quantities and different items from another retail store.
 {¶ 16} Mark White testified that a tarp was placed over appellee's OSB and stored behind the Carter Lumber buildings. White also testified that it was customary for Carter Lumber to maintain possession of materials for customers until such time as they were needed, and that there was no time limitations placed on customers regarding when they had to request delivery. Both White and Cheney testified that the "I-joists" ordered by appellee on August 31, 2000, were not a regular stock item, would be special ordered from the supplier when appellee requested, and would be delivered directly to appellee by the supplier. Appellee testified that no delivery of "I-joists" were ever made to him.
 {¶ 17} Jeff Hitlan testified on behalf of Carter Lumber that from 1999 to 2000 he was the district manager in charge of the Norwalk store. Hitlan testified that, although it was common practice to maintain possession of materials that customers had paid for, but not yet taken possession of, he was not aware of an occasion where Carter Lumber maintained possession for more than six months. Both Hitlan and Thomas Ostrander, District Manager in 2003, testified that two to three months was the typical amount of time that Carter Lumber would maintain possession of customers' materials. Hitlan stated that there were procedures in place whereby the materials would be stored in a warehouse and tagged. Hitlan testified that had he noticed customers' materials there any longer than three months he would ask the manager to have the customer take care of the *Page 7 
material. Hitlan walked through the Norwalk store bi-weekly and stated that he never saw any materials tagged for appellee.
 {¶ 18} Regarding appellee's August 31, 2000 customer receipt, which allegedly contained John Swain's notation that, as of February 4, 2003, appellee was still owed his materials, Hitlan testified that he did not recognize the initials "JSII" to be that of the manager John Swain II. Hitlan did acknowledge that John Swain was the manager of the Norwalk store on February 4, 2003, but he was not sure that John Swain used the suffix "II."
 {¶ 19} Lee Ann Dearth, who internally investigated the matter for Carter Lumber, testified that there was documentation that appellee made a purchase of $2,122.92 in May of 1999, and that he was credited for that purchase in September of 2000. However, she stated the year-end reconciliation report for 1999 did not show that Carter Lumber owed appellee any materials in December 1999. She further testified that no reconciliation report, for any year, showed that Carter Lumber owed appellee any materials; however only the year-end reconciliation report from 1999 was entered into evidence.
 {¶ 20} Thomas Ostrander, District Manager of the Norwalk store in April 2003, testified that he believed that the materials were delivered to appellee on the purchase date, August 31, 2000. He based his belief on the fact that, in the signature area of the credit card receipt for this purchase, the following notation was made: "Delivery, Mike Rang, K.G." Ostrander testified that "K.G." are the initials of Karen Goehring, who was the contractor coordinator at that time. Ostrander stated that the reason for the notation, *Page 8 
instead of a signature, was because the transaction was most likely done over the phone. Additionally, the notation was made on an invoice, and Carter Lumber's policy is that once material is invoiced, it is no longer in its possession.
 {¶ 21} Regarding the "I-joists" ordered by appellee, Ostrander testified that there was no indication that the "I-joists" were not delivered to appellee. In fact, he stated that the August 31, 2000 credit card invoice indicated that they had been delivered. On cross-examination, however, Ostrander admitted that it would be physically impossible for the "I-joists" to have been delivered on August 31, 2000 because they were not in regular Carter Lumber stock, and had to be special ordered. Ostrander also testified that his attempts to discover if the "I-joist" were ever ordered or delivered were frustrated due to the fact that Carter Lumber had ten different "I-joist" suppliers.
 {¶ 22} With respect to the OSB ordered by appellee on August 31, 2000, Ostrander testified that a cycle count of OSB was done for the year 2002, and that a physical count of the OSB was "within pieces" of the OSB sold in 2002. Moreover, Ostrander testified that Carter Lumber was not housing appellee's material in 2002 because the Norwalk store was actually short $210,000 worth of product. In response to questions by the trial court, however, Ostrander testified that it is "possible that [appellee's OSB] left with somebody [other than appellee.]"
 {¶ 23} The trial court found that on May 2, 1999, appellee purchased from Carter Lumber OSB, which was to be delivered when appellee needed. Carter Lumber never delivered the materials purchased on May 2, 1999. On August 31, 2000, Carter Lumber *Page 9 
allowed appellee a full refund for these materials. The trial court also found that it was customary for Carter Lumber to delay delivery of purchased items until the customer demanded, and that no specific time limit was placed on customers to accept delivery.
 {¶ 24} The trial court also found that appellee purchased OSB and "I-joists" on August 31, 2000, in the amount of $6,185.95, and that there was agreement that these materials would be delivered to appellee by Carter Lumber when appellee needed. Appellee intended to use these materials in building a home for himself but ran into unforeseen problems.
 {¶ 25} Additionally, the trial court found that appellee, upon learning of a change in management at the Norwalk store, informed each new manager of the situation, and reiterated that the materials would be delivered when appellee needed. On February 4, 2003,[1] John Swain II made the notation, "Mat. Pd. For in 2000. Still owed Material. JSII," on the original customer receipt dated August 31, 2000.
 {¶ 26} The trial court held that, in October 2003, appellee demanded Carter Lumber deliver the items he bought on August 31, 2000, but that Carter Lumber never delivered the materials, or refunded the purchase price. The trial court additionally held that, after being refused delivery of a portion of the OSB purchased on August 31, 2000, appellee purchased an additional quantity of 7/16 inch OSB on October 7, 2003 to replace the material Carter Lumber refused to deliver at that time. Because of an increase *Page 10 
in material price, the trial court found that appellee incurred $998.27 in additional expenses. The trial court further found that, through October 2005, due to Carter Lumber's continued refusal to deliver the remainder of the materials purchased on August 31, 2000, appellee incurred an additional cost of $3,034.20, plus $197.22 in sales tax, in order to replace the undelivered items. The trial court found that Carter Lumber acknowledged that their internal record keeping of inventory was unreliable and inaccurate prior to 2003. The trial court also found that there are no records held by Carter Lumber that dispute appellee's claims, and that no witness presented by Carter Lumber had any personal knowledge of the transactions with appellee. Accordingly, the trial court awarded appellee judgment against Carter Lumber totaling $10,415.66, which represented the sum of appellee's August 31, 2000 purchase of $6,185.97, the increased cost of replacement materials, on October 7, 2003, of $998.27, and the increased cost of replacement materials, on October 28, 2005, of $3,231.42.
 {¶ 27} Carter Lumber argues in their first assignment of error that the trial court erred by ruling that appellee's action was not barred by the applicable statute of limitations. Carter Lumber offers four alternative arguments upon which the first assignment of error may rest. Carter Lumber argues that appellee's complaint, filed on August 26, 2005, was brought beyond the four year statute of limitations for breach of contract because the breach of contract occurred on August 31, 2000, when appellee bought the materials, or, alternatively, no later than May 31, 2001, eight months after appellee purchased the materials, as that was when appellee originally expected to take *Page 11 
possession of them. Carter Lumber additionally argues that appellee cannot invoke concepts of quasi-contract, unjust enrichment, or quantum meruit, in an attempt to circumvent the legal effect of the contract for the sale of goods. Finally, Carter Lumber argues that appellee cannot recover because the "account is stated" due to appellee's failure to object within a reasonable time to the credit card statements he received since August 31, 2000, which did not reference the materials allegedly being held by Carter Lumber.
 {¶ 28} R.C. 1302.98(A) states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." R.C. 1302.98(B) further states that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Carter Lumber argues that because they accepted payment of $6,185.97 on August 31, 2000, but did not deliver the goods on that date, they were in breach on August 31, 2000. Thus, the statute of limitations began to run on August 31, 2000, and would have ended nearly a year before appellee filed suit on August 26, 2005. In support of this argument Carter Lumber cites that, unless otherwise agreed, delivery of the goods and payment of the purchase price are concurrent conditions. See R.C. 1302.55., Official Code Comment 2.
 {¶ 29} Appellee testified that Carter Lumber agreed to maintain possession of the materials until he needed them, and several witnesses testified that this was common practice at Carter Lumber. We find that there is competent evidence upon which the trial court could rely in finding that, at the time of purchase, there was an agreement between *Page 12 
Carter Lumber and appellee that all of the building materials would be delivered to the building site by Carter Lumber at a time to be determined by appellee. This agreement between the parties superseded the requirement that delivery and payment must be concurrent conditions. Therefore, we find that the breach could not have occurred on August 31, 2000, and must have occurred at some later point in time.
 {¶ 30} Carter Lumber argues that if the breach occurred some time after August 31, 2000, it could not have occurred more than 8 months past that date. R.C. 1302.22(A) states that if the time for delivery is not agreed upon, it will be a reasonable time. R.C. 1302.24(A) states that if a term of agreement of sale is uncertain, and leaves the particulars of performance to be specified by one of the parties, such must be made in good faith and within limits set by commercial reasonableness.
 {¶ 31} Although Thomas Ostrander, the district manager for Carter Lumber, testified that 120 days is the maximum commercially reasonable time for Carter Lumber to store goods purchased by a customer, other testimony refuted this claim. Mark White and Jeff Cheney, two former employees of Carter Lumber, both testified that it was customary for Carter Lumber to maintain possession of materials for customers until needed, and that no time limitation was placed on customers regarding when they had to demand delivery. Moreover, with respect to appellee, in particular, Carter Lumber refunded appellee's May 1999 purchase in September 2000, after appellee's purchase had remained in storage with Carter Lumber for over 15 months. Carter Lumber's own records supported this fact. Also, there was evidence that Carter Lumber was *Page 13 
acquiescing to the continued possession of appellee's materials as late as February 4, 2003, when John Swain II made a notation on appellee's receipt.
 {¶ 32} As such, we find that there was some competent, credible evidence upon which the trial court could rely in finding that it was customary and commercially reasonable for Carter Lumber to store materials, or delay delivery of materials, until such time as the customer requested. We further find, based upon the facts in this case, including Carter Lumber's prior practices and appellee's continued contact with Carter Lumber regarding this purchase, that appellee's 38 month delay, until October 7, 2003, before requesting delivery was not a commercially unreasonable length of time.
 {¶ 33} Because it was customary for Carter Lumber to maintain possession of materials already paid for until such time as the customer demanded delivery, the breach could not have occurred at any point before appellee demanded delivery. Therefore, the breach occurred on October 7, 2003, when appellee was refused delivery of a portion of the materials, and the four year statute of limitations did not preclude the action filed on August 26, 2005. Accordingly, we find that appellee's action against Carter Lumber was timely filed.
 {¶ 34} Carter Lumber also offers two equitable principles to refute the findings of the trial court. Carter Lumber's argues that appellee cannot invoke concepts of quasi-contract, unjust enrichment, or quantum meruit in an attempt to circumvent the legal effect of the contract for the sale of good. Assuming arguendo that Carter Lumber's argument is correct, we nevertheless find that appellee is entitled to judgment based upon *Page 14 
Carter Lumber's breach of contract. Accordingly, we find Carter Lumber's reliance on equitable bases is misplaced and without merit.
 {¶ 35} Carter Lumber further argues that appellee cannot recover because he did not object to the credit card statements he received after August 31, 2000. According to Carter Lumber, because these credit card statements did not reference a credit of goods, and appellee did not object to them in a reasonable amount of time, the account rendered has become an account stated, and appellee therefore cannot bring a claim based on the stated account. Carter Lumber, however, presents no law in support of this assertion. Additionally, Carter Lumber failed to establish that its credit card statements customarily would include a statement regarding non-delivery of goods. Moreover, this matter is governed by R.C. 1302.01 through 1302.98, which do not support Carter Lumber's argument. Accordingly, we find this argument to be without merit.
 {¶ 36} In its reply brief, Carter Lumber offered a fifth justification for its first assignment of error. Carter Lumber attempts to analogize between statute of limitations pertaining to breach of warranty and statute of limitations pertaining to delivery. We find that the bodies of law regarding breach of warranty and delivery are not analogous and, therefore, find any reliance by Carter Lumber on case law or statutory language regarding breach of warranty to be misplaced.
 {¶ 37} Accordingly, we find that the trial court correctly found that, as a matter of law, the breach of contract occurred at the time when appellee demanded the materials from Carter Lumber in October 2003. The trial court also correctly found that appellee *Page 15 
was entitled to judgment under the statutory language of the Ohio Revised Code. Carter Lumber's first assignment of error is therefore found not well-taken.
 {¶ 38} Carter Lumber argues in his second assignment of error that the trial court erred as a matter of law by including in appellee's judgment against Carter Lumber, the cost of the "I-joists" and consequential damages incurred by appellee when he "covered" the loss and purchased replacement materials. Specifically, because Carter Lumber did not have possession of the "I-joists" at the time of the sale, and never gained possession of them, Carter Lumber argues that the seller of the "I-joists" is the manufacturer of the "I-joists," not Carter Lumber. As such, Carter Lumber argues that appellee should have demanded delivery of the "I-joists" from the manufacturer. Carter Lumber also argues that appellee offered no evidence to show that he actually repurchased the materials, the replacement cost for those materials, or that he repurchased the materials within a reasonable amount of time.
 {¶ 39} Initially, we find that Carter Lumber offers no legal authority for its assertion that appellee must pursue his claim against the manufacturer of the "I-joists," rather than Carter Lumber. R.C.1302.01(A)(4) defines "seller" as "a person who sells or contracts to sell goods." It was uncontroverted at trial that Carter Lumber accepted payment for the "I-joists," and agreed to provide them to appellee. It is irrelevant who was to manufacture or deliver the "I-joists" for Carter Lumber. We therefore find that Carter Lumber is the seller of the "I-joists," and the proper party to be sued. *Page 16 
 {¶ 40} Regarding appellee's repurchase of the undelivered items, we find that R.C. 1302.86(A) states that "after breach [where seller fails to deliver] the buyer may `cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." To be entitled to "cover" damages the buyer must show that the goods he purchased were a reasonable substitute for those which were denied him by the seller's breach. Freitag v. Bill Swad Datsun (1981), 3 Ohio App.3d 83, 84-85.
 {¶ 41} R.C. 1302.86(B) additionally states that "[t]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as defined in section 1302.89 of the Revised Code, but less expenses saved in consequence of the seller's breach." The official comment to R.C. 1302.86 adds:
 {¶ 42} "The test of proper cover is whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective.
 {¶ 43} "The requirement that the buyer must cover `without unreasonable delay' is not intended to limit the time necessary for him to look around and decide as to how he may best effect cover."
 {¶ 44} Carter Lumber argues that the prices provided by appellee at trial were gathered an unreasonably long time after the breach by Carter Lumber occurred. In particular, Carter Lumber asserts that appellee was aware sometime in 2003 that Carter *Page 17 
Lumber was not going to acquiesce to his demands, however, appellee did not attempt to "cover" his losses until October 28, 2005. Although it is true that appellee did not determine replacement costs for the remainder of the undelivered materials until October 2005, other evidence presented at trial supports the trial court's finding that appellee's attempt to cover his losses was made within a reasonable time.
 {¶ 45} When questioned by the court about why he did not gather estimates for the material closer to the October 7, 2003 breach, appellee testified that he was unaware that he would never get the materials that were owed him. Gino Meehan, Carter Lumber's manager in October 2003, informed appellee that he was unwilling to give appellee the materials without some investigation; however, appellee testified that he never got a definitive refusal to deliver the goods or refund the money following Carter Lumber's investigation. Additionally, Carter Lumber never responded to letters from appellee's attorney in 2003 and December 2004. Thomas Ostrander, who was in charge of the investigation for Carter Lumber, also testified that he never communicated with appellee. Ostrander believed appellee communicated with Meehan, but provided no evidence of any communication, and Meehan did not testify.
 {¶ 46} Carter Lumber also argues that appellee should not have been awarded cover damages for the materials purchased in 2005, because he did not provide evidence at trial regarding the cost to cover his losses and did not establish that he, in fact, purchased replacement materials. We disagree. *Page 18 
 {¶ 47} At trial, appellee testified that, on October 28, 2005, he purchased from Lowe's, another retail lumber store, the balance of the materials owed him from his August 31, 2000 purchase. Appellee testified that he did not have written documentation of the October 28, 2005 purchase because he bought different quantities and some different items on that day. However, to determine what the balance of materials still owed would have cost him had he repurchased them from Carter Lumber, appellee testified that, on October 28, 2005, he received an estimate over-the-phone from the Oberlin Carter Lumber store totaling $3,034.20, plus $197.22 in sales tax. Appellee testified that the prices were essentially the same between Lowe's and the Oberlin Carter Lumber store. Carter Lumber offered no evidence to dispute the prices given in appellee's testimony.
 {¶ 48} Accordingly, we find that Carter Lumber was the seller of the "I-joists" and that Carter Lumber, not the unknown manufacturer, failed to deliver appellee's order. We also find that, based on Carter Lumber's delay in communicating with appellee, there is competent, credible evidence upon which the trial court could have relied in determining that appellee acted reasonably and in good faith with respect to covering his losses. We further find that there was competent evidence upon which the trial court could rely in determining that, on October 28, 2005, appellee replaced the balance of material owed to him with a reasonable substitute, and that the cost of those replacement materials was also reasonable. We therefore find Carter Lumber's second assignment of error not well-taken. *Page 19 
 {¶ 49} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Carter Lumber is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR.
[1] The trial court erroneously stated February 8, 2003 in its judgment; however, all testimony and evidence establish this date to be February 4, 2003. The trial court's error is not material to this case. *Page 1